United States District Court
Middle District of Florida
Orlando Division

**FRANK DEANGELIS,**

*Plaintiff,*

v.                                                      **NO. 6:24-CV-1733-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

*Defendant.*

---

## Order[1]

Proceeding under 42 U.S.C. § 405(g), the plaintiff presents two arguments for remand. The general law is summarized in the decision by the Administrative Law Judge (ALJ). *See* Tr. 10–21. The administrative record is summarized in the parties' briefs. *See* Docs. 14, 16.

### 1.

A court's review of a decision by the Commissioner of Social Security is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoted authority omitted). The threshold is "not high,"

---

[1]Citations to page numbers are to page numbers generated by CM/ECF.

and courts generally defer to the ALJ, "who has seen the hearing up close." *Id.* at 103, 108. Even if the court "would have reached a different result[,] and even if a preponderance of the evidence weighs against the Commissioner's decision, [the court] must still affirm if the ALJ's decision clears the low evidentiary bar." *Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1309 (11th Cir. 2024).

## 2.

The plaintiff argues that the ALJ failed to adequately assess his mental impairments. Doc. 14 at 11–16. The Commissioner disagrees, emphasizing that the plaintiff's mental impairments were an "afterthought" at the administrative hearing, Doc. 16 at 7 (citing Tr. 51, 54, 62); the documentary evidence shows that the plaintiff stopped working because of his physical impairments, Doc. 16 at 7–8 (citing Tr. 515–16, 912–13, 979, 1008); and the plaintiff attributed his limitations in social and recreational activities to his physical impairments, Doc. 16 at 8 (citing Tr. 912–13).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) uses a "special technique" to evaluate a mental impairment's severity. 20 C.F.R. § 404.1520a(a). The technique helps to identify any need for additional evidence to determine the impairment's severity, to consider and evaluate the mental disorder's "functional consequences" on the claimant's ability to work, and to present findings in an organized and clear manner. *Id.* § 404.1520a(a).

Under the technique, the SSA evaluates the claimant's "symptoms, signs, and laboratory findings" to assess whether the claimant has a "medically determinable mental impairment." *Id.* § 404.1520a(b)(1); *see also id.* § 404.1521 (explaining the requirements for a medically determinable impairment). If the SSA determines that the claimant has a medically determinable mental impairment, the SSA "must specify the symptoms, signs, and laboratory findings" substantiating the impairment's presence and "document" the findings. *Id.* § 404.1520a(b)(1).

After finding the existence of a medically determinable mental impairment, the SSA rates the resulting "degree of functional limitation." *Id.* § 404.1520a(b)(2). "Assessment of functional limitations is a complex and highly individualized process that requires [the SSA] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." *Id.* § 404.1520a(c)(1). The SSA "consider[s] all relevant and available clinical signs and laboratory findings, the effects of … symptoms, and how … functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." *Id.*

The SSA "rate[s] the degree of … functional limitation based on the extent to which [the] impairment[] interferes with [the] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 404.1520a(c)(2). The SSA "consider[s] such factors as the quality and level of … overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." *Id.*

3

The SSA rates the degree of a functional limitation as "[n]one, mild, moderate, marked, [or] extreme" in four areas, known as the "paragraph B criteria": (1) "[u]nderstand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* § 404.1520a(c)(3)–(4); *see also id.* pt. 404, subpt. P, app. 1, 12.00E (explaining the paragraph B criteria). A "mild" rating means that the claimant's functioning on an independent, appropriate, effective, and sustained basis is "slightly limited." *Id.* pt. 404, subpt. P, app. 1, 12.00F(2)(b).

After rating the degree of a functional limitation, the SSA determines the severity of the mental impairment. *Id.* § 404.1520a(d). If the SSA rates the degree as "none" or "mild," the SSA usually finds that the impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the] ability to do basic work activities." *Id.* § 404.1520a(d)(1). If the SSA rates the degree as "severe," the SSA determines whether the impairment meets or equals the severity of any listed mental disorder. *Id.* § 404.1520a(d)(2). If the SSA determines that the impairment neither meets nor equals the severity of any listed mental disorder, the SSA assesses the "residual functional capacity" (RFC). *Id.* § 404.1520a(d)(3); *see also id.* § 404.1545 (explaining the RFC assessment). In assessing the RFC, the SSA considers all "medically determinable impairments" of which the SSA is aware, including those that are not severe. *Id.* § 404.1545(a)(2); *accord* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("[T]he limitations identified in the 'paragraph B' … criteria are not an RFC assessment[.]").

An ALJ's decision "must incorporate the … findings and conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(4). "The decision must

show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment[ and must] include a specific finding as to the degree of limitation in each of the functional areas[.]" *Id.*

The plaintiff worked as a mechanic from October 2008 to October 2021. Tr. 224; *see also* Tr. 515 ("[The plaintiff] was in sales and was a technician for hydraulic hoses."). He alleged that he had stopped working because of "severe" back and sciatica problems, knee and foot problems, and Post-Traumatic Stress Disorder (PTSD). Tr. 223. He identified at least ten medications he was taking, all of which pertained to physical impairments. Tr. 225–26. He explained, "I can't walk or stand for more than 5–10 minutes. If I sit too long it hurts to[o] much. My PTSD makes it difficult for me to react to/with people. With my sleep apnea [and] nightmares[,] I don't sleep. I [am] always in pain in my lower back, feet, hips, knees[, and] neck. The pain is unbearable. My COPD affects my mobility as well." Tr. 231. He added that he does not "play well with others." Tr. 235. When asked how he handles stress and changes in routine, he answered, "not good." Tr. 237.

Laura Cohen, Ph.D., P.A., performed a mental status examination of the plaintiff. Tr. 515–18. Dr. Cohen summarized the plaintiff's statements about his family, employment, and medical histories, including that he had stopped working because he could no longer walk. Tr. 515–18. She wrote that he "was neat and well groomed"; he "was alert and oriented times four"; his immediate, recent, and remote memories were "good"; his "general fund of knowledge was fairly good"; and his "abstract reasoning ability was fair." Tr. 516–17. She also wrote that he "had a depressed tone and a flat affect," he "made little eye contact," he said that the "television triggers him," he said

5

that he "is concerned about his finances," he said that he "startles easily to sudden movement," and he said that he has monthly panic attacks that used to be worse. Tr. 516. She wrote, "He said he stays away from people because he gets irritated too much. He is in pain all the time with his body. It hurts to sit and … walk for too long." Tr. 516. She provided diagnostic impressions of "[PTSD], Chronic Depressive Disorder, secondary to a general medical condition (chronic pain)," and she provided a prognosis of "[f]air," opining that the plaintiff "needs continued care to stabilize emotionally." Tr. 518.

At the initial level, Madelyn Miranda-DeCollibus, Psy.D., identified mental disorders of "Trauma- and Stressor- Related Disorders" and "Depressive, Bipolar and Related Disorders" and found them "Non Severe." Tr. 73. She rated each paragraph B criterion as "mild." Tr. 73. She found, "At this time, there is no discernible evidence of a severe impairment in functioning due to mental illness." Tr. 74. At the reconsideration level, Ellen Suarez-Pinzas, Psy.D., made the same findings. Tr. 81–82.

At the administrative hearing, the plaintiff testified that the "main reason" he cannot work is because of his "lower extremities," from his lower back to his toes, which "go out on" him and cause him "constant pain." Tr. 51. He testified that he knows he has "other issues," but he could not think of any. Tr. 51. When answering a question about medications, he testified that he "used to take kid Zoloft a lot for [his] depression and the PTSD[.]" Tr. 54.

The ALJ found that the plaintiff's "medically determinable mental impairments of adjustment disorder with anxiety … and depression as well as [PTSD], considered singly and in combination, do not cause more than minimal limitation in [his] ability to perform basic mental work activities and are therefore non-severe." Tr. 13. The ALJ observed that the plaintiff had not

6

participated in recommended psychotherapy. Tr. 13. The ALJ observed that the mental status examination "showed normal memory, concentration, speech, thought, and psychomotor activity with adequate judgment and insight." Tr. 13. Like Drs. Miranda-DeCollibus and Suarez-Pinzas, the ALJ rated each paragraph B criterion as mild. Tr. 13–14.

For the area of understanding, remembering, or applying information, the ALJ explained:

> The [plaintiff]'s immediate memory was good. He recalled five digits forward and six digits backwards. His recent memory was noted as good. He recalled all three words given fifteen minutes before and did not require any prompts. His remote memory was noted as good. The [plaintiff]'s general fund of knowledge was fairly good. He knew all four of the last four president[s], the capit[a]l of France and the current governor of Florida. However, he stated that he needs reminders to go places and to take medication (1E/6F).

Tr. 13. For the area of interacting with others, the ALJ explained: "The [plaintiff] lives with his wife and children. He indicated that he often gets annoyed being around other people. However, at the consultative psychological examination[,] he was engaging with [Dr. Cohen] and did not become upset. At medical provider encounters[,] he was noted as pleasant and cooperative (1E/6F/7F)." Tr. 14. For the area of concentrating, persisting or maintaining pace, the ALJ explained:

> The [plaintiff] was able to engage with the psychological examiner and focus sufficiently to answer all questions presented during the consultative examination. His concentration was noted as being within normal limits at times[,] and at other time[s,] he experiences some difficulty concentrating during treatment encounters. He can focus sufficiently to watch television programs and read (6F/ 13F/14F).

Tr. 14. For the area of adapting or managing oneself, the ALJ explained:

> The [plaintiff] is able to go outside one to two times a day. He was able
> to drive himself to the psychological consultative examination. His
> speech was noted as clear and logical[,] and he was regarded as
> pleasant and cooperative during provider encounters. He has no
> difficulty managing finances and can engage in basic meal preparation
> such as making sandwiches and microwave meals. He indicated that
> he occasionally requires the assistance of his wife to engage in dressing
> and grooming (1E/6F).

Tr. 14. The ALJ stated that the RFC "reflects the degree of limitation" that
the ALJ found in the paragraph B analyses. Tr. 14.

The ALJ summarized Dr. Cohen's consultative psychological
examination of the plaintiff:

> The [plaintiff] also participated in a consultative psychological
> examination in January 2023 with Dr. Laura Cohen. [He] drove
> himself to the consultative examination. Dr. Cohen noted that [his]
> immediate memory was good. He recalled five digits forward and six
> digits backwards. His recent memory was noted as good, as he recalled
> all three words given fifteen minutes before and did not require any
> prompts. His remote memory was noted as good[,] and [his] general
> fund of knowledge was noted as fairly good. He knew all four of the last
> four presidents, the capit[a]l of France[,] and the current governor of
> Florida. He named five large U.S. cities, but he could not describe two
> recent current events. His ability to perform mathematical calculations
> was good[,] and he completed serial sevens slowly but surely. He
> completed five out of five multiplication and addition problems
> correctly. His abstract reasoning ability was noted as fair. He
> translated one out of three proverbs correctly and the [sic] accurately
> categorized two different concepts. His prognosis was indicated as fair
> (6F, p. 2-6).

Tr. 17. The ALJ stated that she had "fully considered the medical opinions
and prior administrative medical findings," Tr. 17, including the opinions of

Drs. Miranda-DeCollibus and Suarez-Pinzas. Tr. 18. The ALJ observed that those doctors had not provided a mental RFC. Tr. 18. The ALJ continued:

> Additionally, the [plaintiff] has no established longitudinal treatment history for mental impairments. He was advised to attend psychotherapy sessions but failed to do so[,] and he declined medication for any of his alleged mental impairments. The record reflects a wide range of mental functioning and, accordingly, his mental impairments are deemed non-severe.

Tr. 18.

Contrary to the plaintiff's argument, the ALJ adequately assessed his mental impairments. Reading the decision in its entirety, the ALJ made clear that she included no mental limitation in the RFC because she found that no mental limitation was necessary, considering circumstances that included the plaintiff's "wide range of mental functioning" and the absence of any medical opinion about a mental limitation. *See* Tr. 10–21. The ALJ did not discuss every piece of evidence that could support including a mental limitation in the RFC, but she discussed enough. The court disagrees with the plaintiff's assertion that the court "has been deprived of the opportunity to perform meaningful judicial review of the ALJ's decision." *See* Doc. 14 at 15 (quoted); *see also Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024) ("The ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the claimant's medical condition as a whole.").

The plaintiff emphasizes that he "has a combined service-connected disability rating of 100% through the Department of Veterans Affairs [(VA)], including a 50% rating for depression." Doc. 14 at 7 (citing Tr. 925); *but see* Tr. 515 (Dr. Cohen's statement that VA records from psychotherapy indicate

"80% service[-]connected conditions"). The fact of the rating does not mean or suggest that the ALJ erred. The plaintiff himself claimed disability based on physical impairments and PTSD, not depression. Tr. 223, 231. The plaintiff fails to point to anywhere in the record indicating that the period that the VA considered was the same period that the ALJ considered. *See* Doc. 14; *compare* Tr. 515 (Dr. Cohen's observation that the plaintiff was in the military from 1995 to 1997), *with* Tr. 10–21 (ALJ's decision considering the period from October 5, 2021, to April 17, 2024). Moreover, as explained in 20 C.F.R. § 404.1504, the VA makes disability decisions for its "own programs" using its "own rules," rendering those decisions non-binding and not entitled to "any analysis" when deciding a claim for Social Security benefits.

The plaintiff complains that the ALJ discussed the psychological consultative examination performed by Dr. Cohen "without particular detail." Doc. 14 at 13. The ALJ had no obligation to summarize the examination in greater detail; the decision provided enough information to show that the ALJ had considered Dr. Cohen's report of the examination and Dr. Cohen's prognosis for the plaintiff. *See* Tr. 17.

The plaintiff complains that the ALJ observed that the plaintiff did not attend psychotherapy or actively take medications for mental impairments while omitting that the plaintiff had undergone "medical trials" with Zoloft, Cymbalta, Mirtazapine, and Fluoxetine and "did not have a good response." Doc. 14 at 14 (citing Tr. 912). The supporting citation is to a progress note appearing to record that the plaintiff had said that he had been prescribed those medications in the past but had not started or continued taking them because his "father was an addict," and he was "not big into pills." Tr. 912. Considering that the plaintiff elsewhere described at least ten medications he

10

was taking for physical impairments, Tr. 225–26, and his testimony that he "used to take kid Zoloft a lot for [his] depression and the PTSD," Tr. 54, the ALJ could properly consider the plaintiff's failure to take medication for any mental impairment as evidence of the mental impairment's severity.

The plaintiff relies on *Smith v. Kijakazi*, No. 22-cv-60842, 2022 WL 18356257, at *5–6 (S.D. Fla. Dec. 30, 2022), *report and recommendation adopted*, No. 22-60842, 2023 WL 199342 (S.D. Fla. Jan. 17, 2023). Doc. 14 at 14–15. The court in *Smith* concluded that the ALJ had erred by failing to discuss the claimant's mental impairments after step two when assessing the claimant's RFC. 2022 WL 18356257, at *5. Unlike the ALJ in *Smith*, the ALJ in this case discussed the plaintiff's mental impairments in assessing the RFC. *See* Tr. 17–19.

Remand to further assess the plaintiff's mental impairments and the RFC is unwarranted.

### 3.

The plaintiff argues that the ALJ's evaluation of the plaintiff's subjective testimony is not supported by substantial evidence. Doc. 14 at 16–21. The Commissioner disagrees, contending that the plaintiff is improperly asking the court to re-weigh the evidence. Doc. 16 at 11–16.

In determining whether a claimant is disabled, the SSA considers all of the claimant's symptoms, including pain, and the extent to which the "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). The SSA considers all of the claimant's statements about "symptoms, such as pain, and

any description [the] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and … ability to work." *Id.*

Statements about pain or other symptoms will not suffice to establish disability. *Id.* Objective medical evidence from an acceptable medical source must show that the claimant has a medical impairment that "could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of … pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled." *Id.*

"In evaluating the intensity and persistence of … symptoms, including pain," the SSA "consider[s] all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the] symptoms affect [the claimant]." *Id.* The SSA "will then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his] ability to work." *Id.*

A claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [his] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment[] is present." *Id.* § 404.1529(b). "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical

12

impairment[] which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*

"The finding that [an] impairment[] could reasonably be expected to produce … pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of [the] symptoms." *Id.* The SSA "will develop evidence regarding the possibility of a medically determinable mental impairment when [the SSA has] information to suggest that such an impairment exists, and [the claimant] allege[s] pain or other symptoms but the medical signs and laboratory findings do not substantiate any physical impairment[] capable of producing the pain or other symptoms." *Id.*

"When the medical signs or laboratory findings show that [a claimant has] a medically determinable impairment[] that could reasonably be expected to produce … symptoms, such as pain, [the SSA] must then evaluate the intensity and persistence of [the] symptoms so that [the SSA] can determine how [the] symptoms limit [the claimant's] capacity for work." *Id.* § 404.1529(c)(1). "In evaluating the intensity and persistence of … symptoms, [the SSA] consider[s] all of the available evidence from … medical sources and nonmedical sources about how [the] symptoms affect [the claimant]." *Id.* The SSA also considers medical opinions. *Id.*; *see also id.* § 404.1520c (explaining how the SSA considers medical opinions and prior administrative medical findings).

"Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor

13

disruption." *Id.* § 404.1529(c)(2). "Objective medical evidence" helps the SSA "in making reasonable conclusions about the intensity and persistence of … symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." *Id.* The SSA "will not reject [a claimant's] statements about the intensity and persistence of … pain or other symptoms or about the effect [the] symptoms have on [the claimant's] ability to work solely because the available objective medical evidence does not substantiate [the] statements." *Id.*

"Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [the SSA] will carefully consider any other information [the claimant] may submit about [his] symptoms." *Id.* § 404.1529(c)(3). "The information that … medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms (e.g., what may precipitate or aggravate [the] symptoms, what medications, treatments or other methods [the claimant] use[s] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living) is also an important indicator of the intensity and persistence of [the] symptoms." *Id.*

"[S]ymptoms, such as pain, are subjective and difficult to quantify[.]" *Id.* The SSA will consider "[f]actors relevant to … symptoms, such as pain," including:

   (i)    [the claimant's] daily activities;

   (ii)   [t]he location, duration, frequency, and intensity of … pain or other symptoms;

   (iii)  [p]recipitating and aggravating factors;

(iv)  [t]he type, dosage, effectiveness, and side effects of any medication [that the claimant] take[s] or ha[s] taken to alleviate … pain or other symptoms;

(v)  [t]reatment, other than medication, [that the claimant] receive[s] or ha[s] received for relief of … pain or other symptoms; [and]

(vi)  [a]ny measures [the claimant] use[s] or ha[s] used to relieve … pain or other symptoms[.]

*Id.* § 404.1529(c)(3)(i)–(vi).

The SSA evaluates the statements "in relation to the objective medical evidence and other evidence[.]" *Id.* § 404.1529(c)(4). The SSA considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the] statements and the rest of the evidence[.]" *Id.* The claimant's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [the] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

A Social Security Ruling (SSR) on the evaluation of symptoms provides that if the claimant "fails to follow prescribed treatment that might improve symptoms, [the SSA] may find the alleged intensity and persistence of [the claimant]'s symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017).[2] The ruling continues,

---

[2]SSRs are rulings published under the authority of the Commissioner. 20 C.F.R. § 402.160(b)(1). They "represent precedent final opinions and orders and statements of policy and interpretations that [the SSA has] adopted" and are "binding on all components of [the] SSA." *Id.* SSRs are not binding on a court. *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Unit B Apr. 1981). Still, an SSR is entitled to "great respect and deference" if "the statute is not clear and the legislative history offers no guidance." *Id.* A court must require the SSA "to follow

"[The SSA] will not find a[ claimant]'s symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he … may not comply with treatment or seek treatment consistent with the degree of his … complaints." *Id.* Possible reasons may include that a claimant "may not agree to take prescription medications because the side effects are less tolerable than the symptoms," a claimant "may not be able to afford treatment and may not have access to free or low-cost medical services," a claimant's "religious beliefs may prohibit prescribed treatment," and a claimant "may not be aware that he … has a disorder that requires treatment" because of "a mental impairment (for example, individuals with mental impairments that affect judgment, reality testing, or orientation)[.]" *Id.* at *9–10. The ruling states that the SSA will explain its consideration of the claimant's reasons. *Id.* at *10.

An ALJ must clearly and adequately explain any rejection of a claimant's subjective complaints about symptoms, including pain. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Any implication must be obvious to the court. *Id.* A court "will not disturb a clearly articulated … finding if supported by substantial evidence." *Raper*, 89 F.4th at 1277. "[R]emand is unwarranted unless an error shows unfairness or clear prejudice." *Id.* (internal quotation marks and quoted authority omitted).

In his adult function report, the plaintiff alleged that his wife, not he, cooks, shops, and takes the kids to school. Tr. 232, 234. He alleged that his

---

its regulations where failure to enforce such regulations would adversely affect substantive rights of individuals," even if "the internal procedures are more rigorous than otherwise would be required." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) (internal quotation marks and quoted authority omitted).

wife helps him dress, bathe, shave, and use the toilet. Tr. 232. He alleged that he does no household chores or yardwork. Tr. 233. He alleged that he does not drive. Tr. 234. He alleged that he reads, watches television, and goes to the pool, but does nothing with others and does no social activities. Tr. 235.

At the mental status examination, Dr. Cohen noted that the plaintiff drove himself to the examination. Tr. 515. She noted that he "has smoked two packs of cigarettes a day" beginning when he served in the military. Tr. 516. She noted that he said that on a typical day, he makes two hard-boiled eggs, he sits at the table for as long as he can, he lies back in bed when he is hurting, he watches television or talks on the telephone, he gets up when he hurts again, his wife makes lunch, and he "lags around." Tr. 517.

At the administrative hearing, the plaintiff, then 47 years old, Tr. 48, gave the following testimony. He has a driver's license and a vehicle, but he does not drive except to go to the VA when his wife cannot take him. Tr. 50–51. He smokes one or two cigarettes a day, having decreased usage about a year and a half to two years prior. Tr. 55–56. He lives only with his wife, who works three or four hours a day. Tr. 50. He cannot bathe or dress himself. Tr. 56. He cannot wash dishes, load the dishwasher, do laundry, fold clothes, mop, sweep, vacuum, wipe the counter, shop, take out the garbage, care for or walk their two Huskies, or do any other housework or yardwork. Tr. 56–57, 61–63. He visits no one, but his children visit him. Tr. 57. He reads books, watches television, and talks on the telephone, but he does not use a computer, tablet, or smartphone. Tr. 58. He does not go to church, is not involved in any club, has no hobbies, does not travel, does not go to the beach, does not fish, does not eat out, and does not go to the movies. Tr. 58, 62–63. He can cook and pay bills. Tr. 57, 58. On a typical day, his wife brings him

17

breakfast, he watches a lot of television, and he takes two or three naps. Tr. 59. His pain is "pretty much constant all day." Tr. 59. He never has a day without pain or pain less than a five-out-of-ten. Tr. 59. He can stand for only a few minutes, sit for five minutes, and walk about a half or whole block. Tr. 60. He cannot touch his toes. Tr. 61. The heaviest thing he has lifted over the past couple of years is a gallon of milk. Tr. 61. He has arthritis all over his body. Tr. 62.

The ALJ acknowledged her obligations to evaluate the plaintiff's allegations. Tr. 16. The ALJ summarized the plaintiff's allegations, including his allegation that he was disabled in part from PTSD. Tr. 16. The ALJ evaluated the allegations in light of the other evidence, including Dr. Cohen's report. Tr. 16–18. The ALJ found persuasive the administrative medical findings that excluded any mental RFC limitation. Tr. 18. The ALJ summarized her findings, including that the plaintiff had no established longitudinal treatment history of his mental impairments, that he had failed to adhere to treatment recommendations related to medication management and therapy, and that the record showed he could engage in a wide variety of mental activities. Tr. 18–19. The ALJ referenced her earlier evaluation of the activities and the plaintiff's statements in his adult function report. Tr. 16; *see* Tr. 231–38.

The plaintiff argues that the ALJ's findings are not supported by substantial evidence because the ALJ had to consider why he was not following recommended treatment, and not following recommended treatment is not unusual for someone with mental impairments. Doc. 14 at 18–19 (citing *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2019)). He argues that a "fair view" of the evidence (specifically, his reports

that he was "not big into pills" because his father was an addict, he had received counseling for eight years for PTSD and depression, and he had once tried to commit suicide) is that he had insufficient insight, not the absence of symptomatology. Doc. 14 at 19 (citing Tr. 912). This argument is unpersuasive. As the Commissioner argues, "[T]he record does not reasonably substantiate [the p]laintiff's assertion that his failure to follow treatment recommendations for his mental impairments were due to a lack of insight." Doc. 16 at 14 (emphasis omitted). Moreover, the plaintiff's failure to follow recommended treatment was only one of the reasons the ALJ gave for finding that his allegations regarding the intensity, persistence, and limiting effects of his mental impairments were not fully supported by, or consistent with, the record. *See* Tr. 18–19.

The plaintiff states that when a claimant has PTSD, "the ALJ must consider the episodic and unpredictable nature of the condition," and contends that the ALJ neither considered non-medical evidence about his "activities of daily living, including his report that he receives extensive assistance in tending to his personal needs, such as getting dressed," nor explained why he did not believe the plaintiff. Doc. 14 at 19 (citing *Tumlin v. Comm'r of Soc. Sec.*, No. 2:19-cv-457-JLB-NPM, 2021 WL 1214880, at *13 (M.D. Fla. Mar. 31, 2021)). According to the plaintiff, "The presence of normal mental status examinations and [his] ability to communicate with healthcare providers is not indicative of his ability to work on a sustained basis." Doc. 14 at 19–20.

Contrary to the plaintiff's contention, the ALJ considered the non-medical evidence, including the plaintiff's statements in his adult function report, most of which pertain to physical impairments. *See* Tr. 13–14, 18–19.

The documentary evidence shows that the plaintiff stopped working because of his physical impairments, not his mental ones. *See* Tr. 515–16, 912–13, 979, 1008. He told treatment providers that his functional status and ability to perform all activities of daily living were independent. *See* Tr. 284, 305, 345, 371, 374, 451, 455, 523, 541, 591, 695, 745, 854. He attributed his limitations with social and recreational activities to his physical impairments. *See* Tr. 912–13.

The plaintiff argues that the ALJ failed to consider the factors pertinent to evaluating a claimant's testimony and therefore "failed to apply the correct legal standards." Doc. 14 at 20–21 (citing 20 C.F.R. § 404.1529(c)(3)(i)–(vii)). The decision reflects that the ALJ applied the correct legal standards. The law did not require her to expressly analyze each factor when evaluating the intensity, persistence, and limiting effects of the plaintiff's symptoms. *See* 20 C.F.R. § 404.1529.

## 4.

The Commissioner's final decision is **affirmed**. The clerk is directed to enter judgment for the Commissioner of Social Security and against Frank DeAngelis and close the file.

**Ordered** in Jacksonville, Florida, on September 8, 2025.

Patricia D. Barksdale

Patricia D. Barksdale
*United States Magistrate Judge*